**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
**HOT SPRINGS DIVISION**

**MARION BELT**                                                                  **PLAINTIFF**

       **v.**             Civil No. 05-6021

**WEYERHAEUSER COMPANY**                                                **DEFENDANT**

<u>**MEMORANDUM OPINION**</u>

Now on this 21st day of November, 2005, comes on for consideration **Defendant Weyerhaeuser Company's Motion For Summary Judgment** (document #12), and from said motion, the supporting documentation, and the response thereto, the Court finds and orders as follows:

1. Plaintiff Marion Belt ("Belt") claims that defendant Weyerhaeuser Company ("Weyerhaeuser") terminated him because of his age, in violation of the Age Discrimination In Employment Act (the "ADEA"). Weyerhaeuser denies that it violated the ADEA, contending instead that it terminated Belt as part of a reduction in force, and that he was selected for termination for legitimate business reasons. Weyerhaeuser has moved for summary judgment, and the matter is now fully briefed and ripe for decision.

2. Summary judgment should be granted when the record, viewed in the light most favorable to the nonmoving party, and giving that party the benefit of all reasonable inferences, shows that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. **<u>Walsh v. United States</u>**,

**31 F.3d 696 (8th Cir. 1994).** Summary judgment is not appropriate unless all the evidence points toward one conclusion, and is susceptible of no reasonable inferences sustaining the position of the nonmoving party. **Hardin v. Hussmann Corp., 45 F.3d 262 (8th Cir. 1995).** The burden is on the moving party to demonstrate the non-existence of a genuine factual dispute; however, once the moving party has met that burden, the nonmoving party cannot rest on its pleadings, but must come forward with facts showing the existence of a genuine dispute. **City of Mt. Pleasant, Iowa v. Associated Electric Co-op, 838 F.2d 268 (8th Cir. 1988).**

3. Pursuant to **Local Rule 56.1**, the parties have filed statements of facts which they contend are not in dispute. From those statements, the following significant undisputed facts are made to appear:

\* Weyerhaeuser is a wood and forest products company with operations throughout the United States, including Arkansas. It obtains raw materials from its own timberlands ("fee timber"), from outside vendors ("vendor wood"), and from purchase or lease of standing timber ("bulk wood" or "stump wood").

\* Bulk wood provides a dependable supply of wood, but ties up capital. "Vendor wood" is cheaper, but the supply is less reliable.

\* The cost of transporting raw materials from forest to mill directly affects its procurement costs. All other things

being equal, the farther the raw materials have to be transported, the greater their cost.

\* In 2003, Weyerhaeuser began increasing its use of fee wood and vendor wood, and decreasing its use of bulk wood.

\* Weyerhaeuser's employees responsible for procuring raw materials are known as Raw Materials Representatives. They are said to "marshall" out of their homes, meaning that each Representative uses his home as his center of operations, and procures raw materials from the surrounding area for use by Weyerhaeuser mills in the area.

\* To buy bulk wood, a Raw Materials Representative "cruises" (scouts) a stand of timber that is for sale, evaluating the number and quality of the trees, and then submits an appraisal to Weyerhaeuser, which develops any desired bid for the timber from this appraisal.

\* Belt has cruised timber for one employer or another since 1958. In August, 1991 (when he was 55 years old), he was hired by Robert Fry to cruise timber for Weyerhaeuser in its Arkansas/Oklahoma region.

\* Belt marshalled out of his home in Sheridan, Grant County, Arkansas. Ninety-five per cent of the time, he procured bulk wood, mostly for Weyerhaeuser's Mountain Pine facility, which was the mill closest to his home.

\* Other Weyerhaeuser Raw Materials Representatives in the

Arkansas/Oklahoma region procured both for Mountain Pine and other mills, including Russellville, Dierks, and Wright City.

\* Based on where Belt lived and cruised timber, the raw materials he procured were transported the farthest of any materials procured for Weyerhaeuser.

\* When Belt started working for Weyerhaeuser, Mountain Pine produced both plywood and lumber. Later, sawmill operations at Mountain Pine were discontinued, and only plywood was produced. As a result, the amount of raw materials needed at Mountain Pine decreased by half, and there was no further need for the "big logs" or "high quality logs" used in making lumber.

\* Over time, the job of a Raw Materials Representative became increasingly dependent upon use of computers.

\* In 2002, Weyerhaeuser began to plan a reduction in force for its Arkansas/Oklahoma region. This reduction in force was discussed with employees, and each employee was asked to complete an "Employee Interest Form" which would be considered in connection with decisions regarding which employees would be retained and which would be terminated.

\* The Employee Interest Form asked each employee to indicate whether or not he would be willing to relocate. Belt indicated that he would not be willing to relocate. On the Form, he indicated -- as far as "constraints" that should be considered in his "future placement" -- "Geographic – South and Central

Arkansas." Belt also indicated that his most significant development need was "Additional computer skills."

* Fry recommended that Belt be terminated as part of the reduction in force, and Fry's manager, Rhonda Hunter, approved this recommendation. On February 20, 2004, Fry told Belt that there was no position for him in the new organization.

* Weyerhaeuser retained three Raw Materials Representatives in its Arkansas/Oklahoma region. These were Robert Corley (born 4/3/45, hired 3/4/74); Ron Stanley (born 6/30/47, hired 4/16/73); and Aaron Welch (born 11/14/76, hired 5/4/99).

* Corley, Stanley and Welch all had experience in vendor wood. All procured wood for multiple mills, and all marshalled out of areas closer to Mountain Pine and the other, more westerly, mills than did Belt.

* On July 27, 2004, Belt filed a Charge of Discrimination with the EEOC. Belt, Fry, and Hunter were all interviewed in connection with the Charge. During his interview with the EEOC investigator, Belt did not dispute the facts and reasons given by Fry and Hunter for selecting him for termination.

* On December 2, 2004, the EEOC issued a Dismissal and Notice of Rights. This lawsuit followed.

4. In order to make out a *prima facie* claim of age discrimination, Belt must show:

(a) that he is within the protected age group;

(b) that he met the applicable job qualifications;

(c) that he suffered an adverse employment action; and

(d) that there is some additional evidence that age was a factor in Weyerhaeuser's decision with regard to him. **Stidham v. Minnesota Mining and Manufacturing, Inc.**, 399 F.3d 935 (8th Cir. 2005). If Belt establishes a *prima facie* case, and Weyerhaeuser then offers a legitimate, nondiscriminatory explanation for the adverse employment action, Belt must then prove that Weyerhaeuser's explanation is not the real reason, but a mere pretext for discrimination. **Groves v. Cost Planning and Management International, Inc.**, 372 F.3d 1008 (8th Cir. 2004).

5. Weyerhaeuser contends that Belt cannot make out a *prima facie* case of age discrimination, nor prove that its proffered reason for his termination is a pretext for discrimination. It admits that Belt is within the protected age group (he was 68 at the time of his termination), that he met the applicable job qualifications, and that he suffered the adverse employment action of being terminated, but denies that there is any evidence that age was a factor in the decision to terminate him.

Weyerhaeuser contends that Belt's job was eliminated in the course of a *bona fide* reduction in force, and that Belt was selected as one of the employees to be let go for legitimate business reasons, i.e., because he lived too far from the mill to

which his timber was hauled and was not willing to relocate; he procured for only one mill whereas the other Raw Materials Representatives each procured for several mills; the type of wood Belt was experienced at cruising was no longer used at the mill closest to him; and his computer skills were weak at a time when computers were being increasingly used in his line of work.

6. Belt responds that he can offer evidence that his position was not eliminated, but rather that his job was given to a younger employee (although he cannot positively identify who it was given to); that the current geographic range of Raw Materials Representatives is comparable to his; that what he meant when he indicated he was "not willing to relocate" was that he would not relocate out of state or relocate for a lesser job; that he procured for only one mill because that was what he was assigned to do; that Weyerhaeuser still procures wood from his area[1]; and that while his computer skills were the weakest of the four Raw Materials Representatives in his group, he could perform all computer tasks required by his job description, and there was no mention of any such weakness on a positive evaluation he received two days before he was terminated.

These arguments (with the exception of the first) are not evidence of discrimination, but rather rebuttals of the reasons

---

[1] Belt also contends that there is a fact issue as to when the shift to vendor wood occurred, but his failure to dispute Weyerhaeuser's factual assertion in the Statement of Undisputed Facts that this began in 2003, and his acknowledgment that the same information was correct when given to the EEOC investigatory, puts this issue to rest.

given by Weyerhaeuser for selecting him for termination rather than some other employee. However, it is not enough for Belt to show that Weyerhaeuser's reasons are incorrect, contrived, or even false. He must show that the reasons are a pretext for discrimination. **Hutson v. McDonnell Douglas Corp., 63 F.3d 771 (8th Cir. 1995).** This Court cannot "'sit as a super personnel department that reexamines an entity's business decisions'." **Torlowei v. Target, 401 F.3d 933 (8th Cir. 2005).** The Court thus focuses its inquiry on the issue of whether Belt has shown any evidence that he was subjected to age-based discrimination.

7. One piece of evidence suggested as proof of age discrimination by Belt is his claim that he was replaced by a younger person. However, even giving the evidence the most favorable inferences it is capable of supporting, the Court does not believe it will pass muster. On the one hand, Belt claims he does not know who replaced him, which would clearly leave the matter in the realm of mere supposition. On the other hand, he claims that Aaron Welch, a younger Raw Materials Representative in his group, took over his job duties. This is likewise not sufficient. While evidence that a plaintiff's job was given to a younger individual would be some evidence of age discrimination in the ordinary age discrimination case, in a reduction in force case it is to be expected that a terminated employee's duties will be redistributed among the remaining work force. In such a

situation, which is presented here, the mere fact that a younger employee takes on some of an older employee's duties is not sufficient evidence of age discrimination. **Yates v. Rexton, Inc., 267 F.3d 793 (8th Cir. 2001).**

8. Belt also offers an analysis of statistical evidence which he claims is evidence of age discrimination. He claims that the evidence shows that out of 34 employees terminated during the reduction in force, all but two were over the age of 40, and that every employee over the age of 60 was terminated. He claims that before reorganization, employees over 40 accounted for 75.23% of the work force in the Arkansas/Oklahoma region, while afterwards they accounted for only 67.57%. He also claims that before reorganization, the average age of the employees in the Arkansas/Oklahoma region was 46.12 years, while afterward it was 42.81 years.

Weyerhaeuser challenges the similarity of the employees involved in Belt's statistical computations, pointing out that 20 of the 34 terminations were made pursuant to a union contract requiring termination to be based strictly on seniority; and that four of the salaried employees chose to leave and take a severance package when offered the option. This would effectively eliminate 24 of the 34 employees upon which Belt's statistical analysis depends.

Weyerhauser also challenges the accuracy of Belt's

computations, saying that its own calculations show that the average age before and after reorganization went from 45.54 years to 44.04 years, which would not, under Eighth Circuit precedent, be a sufficient drop to show discrimination.

There is no need to look into the accuracy of the various arithmetical computations, however, as the Court agrees with Weyerhaeuser that the statistical sample is not composed of a group of sufficiently similar employees, nor is the sample size large enough to be statistically significant.

It is not only common sense, but settled law, that statistical evidence must be based on the treatment of comparable employees, that is, employees who are similarly situated in all relevant respects. **Hutson**, *supra*, **63 F.3d 771**. The only employees who might be considered similarly situated to Belt, *vis a vis* the reorganization, were the other Raw Materials Representatives in the Arkansas/Oklahoma region.[2] That group, as near as the Court can determine, comprised only 13 people[3], too few to obtain a statistically-significant sample. Cf. **Mems v. City of St. Paul, Department of Fire and Safety Services**, **224 F.3d 735 (8th Cir. 2000),** and cases cited therein. Likewise, in

---

[2]Weyerhaeuser argues that even this group contains people who were not similarly situated, but the Court need not address its argument for further narrowing the pool of comparators.

[3]The Court derives this number from the individuals listed on Exhibit 9 to Plaintiff's Reply To Defendant's Statement Of Facts And Counter-Statement Of Material Facts In Dispute, not counting Douglas Read who had not yet been hired, and adding back Ogee Beggs, Arlie Chisum, and Marion Belt, who had been let go before this list was generated.

computing the reduction in age of the work force, once one takes out of consideration those employees selected for termination on the basis of the union contract and those who volunteered to accept a severance package, the remaining group is also too small to yield meaningful results.

9. Belt also relies a comment made to him by former Raw Materials Representative Rich Heineman, to the effect that "we ought to get rid of these old heads." Heineman had no supervisory authority over Belt, however, and was not a decisionmaker with regard to Belt's termination.

This evidence does not support Belt's position. Stray remarks suggesting animus toward older workers may, under some circumstances, be relevant to establishing a *prima facie* case of age discrimination, but they must be made by a decisionmaker. **Girten v. McRentals, Inc., 337 F.3d 979 (8th Cir. 2003)**. The isolated remark by Heineman does not fall into this category.

10. Belt also suggests that a question he was asked by his supervisor, Fry, when Belt turned 65 in 2001, indicates age-based animus. Fry asked Belt what his "plans" were, and Belt told him "I don't have any plans. Day to day. I'm healthy, in good shape. I'm here until you run me off." Fry replied, "Oh, we're not going to run you off." Belt testified that he did not interpret this question to reflect any age bias against him.

Questions about retirement do not, in and of themselves,

suggest discrimination. "Sometimes retirement inquiries are so unnecessary and excessive - that is, unreasonable - as to constitute evidence of discriminatory harassment. However, when the inquiries are reasonable given the circumstances, a plaintiff should not be able to rely on those inquiries to prove intentional discrimination." **Cox v. Dubuque Bank & Trust Co., 163 F.3d 492 (8th Cir. 1998)**(internal citation omitted). Here, there was only one such inquiry, made at the time of Belt's 65th birthday, and not even Belt himself found the question suggestive of age-based animus. The inquiry was clearly reasonable under the circumstances, and Belt cannot rely upon it to prove his claim.

11. Belt also relies upon the Affidavit of Ogene Beggs, another Weyerhaeuser Raw Materials Representative in the Arkansas/Oklahoma region. Beggs avers that based on his 33 years at Weyerhaeuser, "I feel that age was a factor in my being told that there was no longer a place in Weyerhaeuser for me," and that in two previous Weyerhaeuser reorganizations, "it appeared that the oldest employees were targeted to be let go or terminated."

This Affidavit will not support Belt's claim, as it references previous reorganizations not shown to be in any way relevant to the current one. There is no indication when they occurred, who the principals of the company were, what circumstances precipitated them, what criteria were applied, how many employees of what ages were let go, or any other similar

information.  Nor is Beggs' unsupported conclusion that he felt that age was a factor in his being let go sufficient, being nothing more than an assumption.

12.  Finally, Belt suggests that, while any of the above bits of evidence taken alone might not suffice, that they have a synergistic effect upon one another, such that their overall effect is greater than the sum of their parts.  The Court might agree with this argument if the bits of evidence were each, in its own way, relevant and reliable.  For the reasons given, the Court has concluded that they are not.  In addition, the Court notes Belt's own testimony that he does not believe anyone else at Weyerhaeuser was discriminated against based on age, although some 30 other people over 40 lost their jobs in the reduction in force.  There is also Belt's particularly telling testimony that his conclusion that he was discriminated against because of age is not based on facts but is just an assumption: "When a company needs experienced personnel to do a job, he's healthy, in good shape and willing, and they let him go, why did they let him go?  They had to have a reason....I just assumed they let me go because I was the old head there."

The Court finds that, even giving Belt's evidence its most favorable inferences, there is simply not enough evidence to persuade a reasonable jury that Belt was let go because of his age.  Summary judgment in favor of Weyerhaeuser is therefore

appropriate.

**IT IS THEREFORE ORDERED** that **Defendant Weyerhaeuser Company's Motion For Summary Judgment** (document #12) is **granted.** Judgment in favor of Weyerhaeuser Company will be entered by separate order.

**IT IS SO ORDERED.**

      /s/ Jimm Larry Hendren
**JIMM LARRY HENDREN**
**UNITED STATES DISTRICT JUDGE**